No. 26-1078

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE SIXTH CIRCUIT

## IN RE: CHEVROLET BOLT EV BATTERY LITIGATION

ROBIN ALTOBELLI, on behalf of themselves and all others
similarly situated, et al.

*Plaintiffs–Appellees*

INDIVIDUAL CLASS MEMBERS STRATEGIC LEGAL PRACTICES APC

*Plaintiffs–Appellants*

v.

GENERAL MOTORS, LLC; LG CHEM LTD.; LG ENERGY SOLUTION,
LTD; LG ENERGY SOLUTION MICHIGAN, INCORPORATED; LG
ELECTRONICS, INC.; LG ELECTRONICS USA, INC.

*Defendants–Appellees.*

On appeal from the United States District Court for the
Eastern District of Michigan, Southern Division, No. 2:20-CV-13256-TGB-CI
Honorable Terrence G. Berg

## APPELLANTS' OPENING BRIEF

**THE LIBLANG LAW FIRM, P.C.**
Dani K. Liblang (MI Bar No. P33713)
*danil@liblanglaw.com*
346 Park Street, Suite 200
Birmingham, Michigan 48009
(248) 540-9270 / Fax: (248) 433-1989

**GREINES, MARTIN, STEIN &
RICHLAND LLP**
Cynthia E. Tobisman
(CA Bar No. 197983)
*ctobisman@gmsr.com*
Joseph V. Bui (CA Bar No. 293256)
*jbui@gmsr.com*
Edward Tao (CA Bar No. 365976)
*etao@gmsr.com*
6420 Wilshire Boulevard, Suite 1100
Los Angeles, California 90048
(310) 859-7811/ Fax: (310) 276-5261

*Attorneys for Plaintiffs–Appellants*
INDIVIDUAL CLASS MEMBERS STRATEGIC LEGAL PRACTICES APC

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Appellants make the following disclosures:

1.  They are not subsidiaries or affiliates of a publicly owned corporation.

2.  There is no publicly owned corporation, not a party to the appeal, with a financial interest in the outcome of this appeal.

Dated:  May 13, 2026

THE LIBLANG LAW FIRM, P.C.
 Dani K. Liblang

GREINES, MARTIN, STEIN &
RICHLAND, LLP
 Cynthia E. Tobisman
 Joseph V. Bui
 Edward Tao

By:  */s/ Edward Tao*
 Edward Tao
Attorneys for Plaintiffs and Appellants
INDIVIDUAL CLASS MEMBERS
STRATEGIC LEGAL PRACTICES APC

**TABLE OF CONTENTS**

|  | | Page |
|---|---|---|
| CORPORATE DISCLOSURE STATEMENT | | 2 |
| TABLE OF AUTHORITIES | | 6 |
| STATEMENT IN SUPPORT OF ORAL ARGUMENT | | 11 |
| STATEMENT OF JURISDICTION | | 12 |
| STATEMENT OF ISSUES | | 13 |
| STATEMENT OF THE CASE | | 14 |
| | A. General Motors manufactures vehicles that are prone to spontaneously catching fire. | 14 |
| | B. Fifty individual consumers—many of whom had vehicles that caught fire—bring individual lawsuits seeking a refund, civil penalty, and punitive damages. | 15 |
| | C. Other consumers across the country bring a class action. These plaintiffs and their attorneys eventually negotiate a settlement with GM. | 16 |
| | D. The Class Settlement's opt-out provisions direct those consumers who want to opt out to "personally sign," without explaining what that means. | 18 |
| | E. Appellants sign their opt-out requests via DocuSign, and send those requests to GM. | 21 |
| | F. The settlement administrator and the district court deem Appellants' opt-out requests ineffective based on supposed technicalities—not because their intent to opt out was unclear. | 22 |
| | G. The court finalizes the settlement. The 50 individual consumers timely appeal thereafter. | 24 |
| SUMMARY OF ARGUMENT | | 25 |

# TABLE OF CONTENTS

**Page**

STANDARDS OF REVIEW ........................................... 28

ARGUMENT ............................................................... 30

I. The District Court Erred By Refusing To Apply The "Reasonable Indication" Standard To Appellants' Opt-Out Requests. ........................................... 30

    A. Courts in this Circuit consistently find opt-outs effective when they reasonably indicate an intent to be excluded. The trial court erred in applying a more stringent standard. ........................................... 30

    B. The trial court's approach is inconsistent with the federal rules and well-established principles favoring substance over form. ........................................... 33

    C. A technical-compliance rule would undermine opt-out rights and facilitate gamesmanship, without providing any other offsetting benefit. ........................................... 37

    D. Because the facts are undisputed, the Court can—and should—apply the reasonable-indication standard in the first instance and deem Appellants' opt-out requests to be legally sufficient. ........................................... 43

II. Notice Was Deficient As A Matter Of Law, Both Because It Was Not Provided To Appellants' Counsel And Because It Did Not State That Wet-Ink Signatures Were Required. ........................................... 45

    A. The notices were sent directly to represented consumers, bypassing their retained counsel. ........................................... 46

    B. The notices failed to disclose any wet-signature requirement. ........................................... 49

    C. Because notice was deficient, the district court was required to accept Appellants' resubmitted wet-signature requests. ........................................... 54

**TABLE OF CONTENTS**

                                                     **Page**

III. The District Court Erred In Reading A Wet-Ink Signature Requirement Into The Opt-Out Provisions. .......... 55

    A. The Class Settlement's plain text merely requires that opt-out requests are *personally signed*, not *personally signed "by hand."* .......... 55

    B. Secondary canons of construction resolve any uncertainty in favor of electronic signatures. .......... 62

CONCLUSION .......... 67

CERTIFICATE OF COMPLIANCE .......... 69

CERTIFICATE OF SERVICE .......... 70

ADDENDUM .......... 71

I. DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .......... 71

II. DESIGNATION OF RELEVANT STATUTES, RULES, AND REGULATIONS .......... 74

III. DECISIONS NOT AVAILABLE IN PUBLICLY ACCESSIBLE ELECTRONIC DATABASES .......... 76

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Walgreen Co.*,
  47 F.4th 1115 (9th Cir. 2022) ............ 12

*Ahearn v. Jackson Hosp. Corp.*,
  351 F.3d 226 (6th Cir. 2003) ............ 28

*Ammex, Inc. v. United States*,
  367 F.3d 530 (6th Cir. 2004) ............ 28

*Bonner v. Tex. City Indep. Sch. Dist. of Tex.*,
  305 F.Supp. 600 (S.D. Tex. 1969) ............ 32

*Campbell v. Potash Corp. of Saskatchewan*,
  238 F.3d 792 (6th Cir. 2001) ............ 28

*Dyna Grind Servs., LLC v. City of Riverview*,
  No. 255825, 2006 WL 1185383 (Mich. Ct. App. May 4,
  2006) ............ 64

*Gortat v. Capala Bros, Inc.*,
  No. 07 Civ. 3629 (ILG) (SMG), 2011 WL 6945186
  (E.D.N.Y. Dec. 30, 2011) ............ 40

*In re Auto. Parts Antitrust Litig.*,
  997 F.3d 677, 681 (6th Cir. 2021) ............ 55, 59

*In re Auto. Parts Antitrust Litig.*,
  No. 12-MD-02311, 2019 WL 11005451 (E.D. Mich. Dec. 29,
  2019) ............ 50

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  171 F.R.D. 213 (N.D. Ill. 1997) ............ 40

*In re Broiler Chicken Antitrust Litig.*,
  133 F.4th 761 (7th Cir. 2025) ............ 41

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005) ............ 12

*In re Deepwater Horizon*,
  819 F.3d 190 (5th Cir. 2016) ............ 28

Page(s)

*In re Four Seasons Sec. L. Litig.*,
493 F.2d 1288 (10th Cir. 1974) .................................................. 32, 35, 37

*In re Navistar MaxxForce Engines Marketing, Sales Practices, and Products Liability Litigation*,
990 F.3d 1048 (7th Cir. 2021) .................................... 33, 34, 35, 37, 41

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
246 F.3d 315 (3d Cir. 2001) ........................................................ 34, 40

*In re Regions Morgan Keegan Sec., Derivatives and ERISA Litig.*,
No. 09-2009, 2018 WL 5777503 (W.D. Tenn. Nov. 2, 2018) ............ 33

*In re Travel Agent Comm'n Antitrust Litig.*,
No. 1:03 CV 30000, 2006 WL 8439540 (N.D. Ohio Sept. 14, 2006) ......................................................................................... 33

*Kern v. Siemens Corp*,
393 F.3d 120 (2d Cir. 2004) ......................................................... 31

*Klapp v. United Ins. Group Agency, Inc.*,
663 N.W.2d 447 (Mich. 2003) ...................................................... 64

*Koon v. United States.*,
518 U.S. 81 (1996) ....................................................................... 28

*Laible v. Lanter*,
91 F.4th 438 (6th Cir. 2024) ......................................................... 28

*Losantiville Country Club v. Comm'r of Internal Revenue*,
906 F.3d 468 (6th Cir. 2018) ........................................................ 44

*McCubbrey v. Boise Cascade Home & Land Corp.*,
71 F.R.D. 62 (N.D. Cal. 1976) ...................................................... 37

*Mulbah v. Detroit Bd. of Educ.*,
261 F.3d 586 (6th Cir. 2001) ........................................................ 36

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................. 50, 53

*Old Kent Bank v. Sobczak*,
620 N.W.2d 663 (Mich. Ct. App. 2000) ....................................... 63

# TABLE OF AUTHORITIES

**Page(s)**

*Parrish v. United States*,
605 U.S. 376 (2025) .......................................................... 36

*Perrigo Institutional Investor Group v. Papa*,
150 F.4th 206 (3d Cir. 2025) .............. 33, 34, 35, 37, 41, 42

*Phillips Petrol. Co. v. Shutts*,
472 U.S. 797 (1985) .......................................................... 50

*Pickalo v. Mack*,
186 N.W. 502 (Mich. 1922) .............................................. 62

*Plummer v. Chem. Bank*,
668 F.2d 654 (2d Cir. 1982) .................................. 31, 32, 35

*Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*,
666 N.W.2d 251 (Mich. 2003) .......................................... 36

*Rory v. Cont'l Ins. Co.*,
703 N.W.2d 23 (Mich. 2005) ...................................... 56, 61

*UAW v. Gen. Motors Corp.*,
No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar.
31, 2006) .......................................................................... 51

*United States v. Mahbub,*
818 F.3d 213 (6th Cir. 2016) ............................................ 45

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) ............................................ 45

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......................................................... 30

*Whitt v. Gardner*,
389 F.2d 906 (6th Cir. 1968) ............................................ 43

*Wolf v. Mahar*,
862 N.W.2d 668 (Mich. Ct. App. 2014) ...................... 56, 61

*Zeitler v. Concordia Fire Ins. Co.*,
169 N.W. 332 (Mich. 1912) .............................................. 62

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

28 U.S.C. § 1291 ........................................................................ 12

28 U.S.C. § 1332 ........................................................................ 12

Cal. Civ. Code § 1793 ...................................................... 16, 17, 46

Cal. Civ. Code § 1794 .......................................................... 16, 17

**Rules**

Fed. R. App. P. 4 ........................................................................ 24

Fed. R. Civ. P. 23 .......................... 26, 30, 31, 32, 46, 47, 50

**Other Authorities**

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1787 (3d ed. 2026) ........................................ 31

Andy Bornhop, *2022 Chevrolet Bolt EV Review*, Kelley Blue Book (Jan. 30, 2025), https://www.kbb.com/chevrolet/bolt-ev/2022/ ........................................................................ 17

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements,* 59 Fla. L. Rev. 71, 79-80 (2007) ........................................................ 38

Dan Neil, *Chevy Bolt: Meet the First Practical, Mass-Market Electric Vehicle*, Wall St. J., Oct. 19, 2017 ........................ 14

*In writing*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/in-writing (last visited Apr. 27, 2026) ........................................ 60

*In writing*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/in%20writing (last visited Apr. 27, 2026) ........................................................................ 60

Model Rules of Pro. Conduct r. 4.2 cmt. (Am. Bar Ass'n 2025) https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_4_2_communication_with_person_represented_by_counsel/comment_on_rule_4_2/ (last visited May 11, 2026). ........ 20, 47, 48

**TABLE OF AUTHORITIES**

**Page(s)**

*Personally*, Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/personally (last visited Apr. 27, 2026) ................................................ 59

*Personally*, Merriam-Webster Dictionary,
https://www.merriam-webster.com/dictionary/personally (last visited Apr. 27, 2026) ................................................ 59

Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 204 (2003) ................................................ 38

Saisuman Revankar, *E-signature and Digital Document Statistics By Market Size, Usage and Facts*, ElectroiQ (Nov. 10, 2025), https://electroiq.com/stats/e-signature-and-digital-document-statistics/ ................................................ 21

*Sign,* Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/sign (last visited Apr. 27, 2026) ................................................ 60

*Sign,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sign (last visited Apr. 27, 2026) ................................................ 59

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Pursuant to Sixth Circuit Local Rule 34, appellants[1]

respectfully request oral argument in this matter.  Oral argument is

desirable because the issues raised in this appeal require further

explanation beyond the written brief, such that oral argument will

facilitate this Court's consideration of the issues in this appeal.

---

[1] Appellants are 50 consumers from California whose requests to opt out of the class action were deemed invalid.  Their names are:  (1) Jesus Damian; (2) Gabriel Perez; (3) Ejaz Mohammad; (4) Carol Blaschke; (5) Jeffrey Griffin; (6) John Scandurra; (7) Armik Shahnazarian; (8) Teng Wu; (9) Mark Siroky; (10) Elizabeth Moore; (11) Janet L. Allen; (12) Jung Park; (13) Kenneth Tibbot; (14) Kenneth Rickerman; (15) Vipul Shah; (16) Ezzat Gabriel; (17) Joden Paul Sanguinetti; (18) Victor Fernandez; (19) Beth Gregorian; (20) Gabriela Johnson; (21) Seyed-Shahab Amini; (22) Eric Bradle; (23) David Zimmermann; (24) Hratchia Tom Zarian; (25) Laurie Noe; (26) William Zimmerman; (27) Ellen Rudolph; (28) Masaki Kobayashi; (29) Kiumars Khalili; (30) Michael Backes; (31) Blanca Aviles; (32) Vaibhav Bheda; (33) Andrew S. Love; (34) Grigor Golamirians; (35) Susanne Castro Carl Koncz; (36) Nancy C. Rieser; (37) John H. Taylor; (38) Vishal Shivaji Mahadkar; (39) Fredy R. Chalco; (40) Sara Fallas-Dweck; (41) Bradlee J. Berry; (42) Aerin Schlumpberger; (43) Syed Bahaul Huq; (44) Hugh Royston Cousins; (45) Hsueh-Sheng Michael Cheng; (46) Abigail Elaine Terrasas; (47) Quoc Si P. Le; (48) Thomas R. Omstead; (49) Nancy Woan-Ming Fairbanks; (50) Rudolph Gizzi Jr. (collectively, "Appellants").  Strategic Legal Practices, APC (SLP) Letter, R. 302-2, Page ID # 15138-43.

**STATEMENT OF JURISDICTION**

The district court (Hon. Terrence G. Berg) had subject-matter jurisdiction in this case pursuant to 28 U.S.C. § 1332(d).

On October 17, 2025, the district court issued an order ("Opt-Out Order," R. 287) invalidating Appellants' opt-out requests. On December 22, 2025, the district court denied Appellants' motion for reconsideration ("Recons. Order," R. 308). That same day, the district court entered an opinion and order granting final approval of the settlement ("Final Approval Order," R. 309).

Because the Final Approval Order is a final decision, this Court has jurisdiction under 28 U.S.C. § 1291. *See Aguilar v. Walgreen Co.*, 47 F.4th 1115, 1120-21 (9th Cir. 2022) (rejecting an appeal from an order invalidating certain opt-outs because appellants "offer no reasons" why the order cannot be "effectively challenged after a final judgment has been entered"); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 283 (3d Cir. 2005) (challenge to order invalidating opt-outs; appeal brought after "the District Court issued a Final Order approving a proposed settlement"). Appellants timely appealed the December 22, 2025 Final Approval Order on January 20, 2026. Notice of Appeal, R. 316, Page ID # 15583-84.

12

**STATEMENT OF ISSUES**

1. Did the district court err in ruling that Appellants forfeited their right to opt out of a class settlement where Appellants' opt-out requests met the "reasonable indication" standard?

2. Did the district court err in holding that Appellants had sufficient notice of any wet-signature requirement where the class settlement notices were sent directly to represented consumers rather than their counsel, and none of the notices disclosed that wet-ink signatures were required?

3. Did the district court err in construing the class settlement's opt-out procedures as barring an electronic signature and instead requiring a wet-ink, handwritten signature, where the settlement's plain text requires only that opt-out requests be "personally signed?"

**STATEMENT OF THE CASE**

**A.      General Motors manufactures vehicles that are prone to spontaneously catching fire.**

Defendant General Motors (GM) manufactures Chevrolet Bolt Electric Vehicles—a line of high-end vehicles whose base model typically sells for over $30,000.  Order Resolving Pretrial Mots., R. 118, Page ID # 7915-16; Dan Neil, *Chevy Bolt: Meet the First Practical, Mass-Market Electric Vehicle*, Wall St. J., Oct. 19, 2017.

GM is able to charge consumers a premium on those vehicles by providing consumers with a new-car warranty that signals that the vehicles will be safe, reliable, and functional for the long term.  Order Resolving Pretrial Mots., R. 118, Page ID # 7920.

The Chevy Bolts, however, were anything but safe:  consumers across the country reported that those vehicles were equipped with defective batteries that, when charged "to full or near full capacity," could overheat and "burst into flames."  Final Approval Order, R. 309, Page ID # 15505.

**B. Fifty individual consumers—many of whom had vehicles that caught fire—bring individual lawsuits seeking a refund, civil penalty, and punitive damages.**

Appellants claim that their Chevy Bolts were plagued with serious issues—including that their vehicles had spontaneously caught on fire or were at risk of doing so. *See e.g.*, MJN-13, 212, 254 (Complaints).

Because Appellants are California residents, they brought their individual actions under the Song-Beverly Consumer Warranty Act (California's Lemon Law) and also for common law fraud.

They alleged *inter alia* that:

- GM manufactured vehicles that it knew could catch on fire;

- GM concealed that information from Appellants at all times, thus inducing them to purchase the vehicles; and

- GM then failed to conform the vehicles to warranty.

*See e.g.*, MJN-16–20 (Damian Compl.), 421-24 (Moore Compl.), 1458-62 (Johnson Compl.).

If their individual lawsuits are successful, Appellants stand to recover a full refund of the amounts paid or payable on their defective vehicles, and much more if they can prove that GM willfully violated

its warranty obligations or committed fraud warranting imposition of punitive damages. *See* Cal. Civ. Code §§ 1793.2(d)(2) (Song-Beverly provision providing for restitution), 1794(c) (Song-Beverly provision providing for the recovery of up to two times actual damages if the manufacturer willfully violates the statute).

### C. Other consumers across the country bring a class action. These plaintiffs and their attorneys eventually negotiate a settlement with GM.

Separately from Appellants' lawsuits, numerous other consumers brought suit against GM and various LG entities (collectively, the "defendants") for the same issues with the Chevy Bolt. Final Approval Order, R. 309, Page ID # 15504-05. Many of these suits were eventually consolidated into a single class action in the Eastern District of Michigan. *Id.*

The class plaintiffs and GM ultimately negotiated a settlement agreement ("Class Settlement")—an agreement that was negotiated and executed entirely without input from Appellants or any other consumer who chose to bring their own individual suit. Opt-Out Order, R. 287, Page ID # 14302.

Under the terms of the Class Settlement, class members generally would be entitled to $700 or $1,400, depending on their case. Prelim. Class Action Approval Mot., R. 157, Page ID # 9720. In exchange, class members would have to release defendants from all claims alleged or that could have been alleged in the class action. *Id.* at Page ID # 9723.

For Appellants, the Class Settlement would mean generally accepting no more than $1,400 for a new, warranted vehicle that retails for over $35,000 and that was plagued with a serious defect that made it unsafe to drive. *See* Andy Bornhop, *2022 Chevrolet Bolt EV Review*, Kelley Blue Book (Jan. 30, 2025), https://www.kbb.com/chevrolet/bolt-ev/2022/ (noting the 2021 Bolt retailed for $36,500). This is a remedy that falls far short of what the Song-Beverly Act would provide. *See* Cal. Civ. Code §§ 1793.2(d)(2) (Song-Beverly provision providing for restitution), 1794(c) (Song-Beverly provision providing for the recovery of up to two times actual damages if the manufacturer willfully violates the statute).

**D.** **The Class Settlement's opt-out provisions direct those consumers who want to opt out to "personally sign," without explaining what that means.**

Consumers who purchased a 2017-2022 Chevrolet Bolt electric vehicle built and shipped to dealers before August 2021 were automatically included in the settlement class, subject to certain opt-out provisions—namely, presumptive class members could decide to opt out of the Class Settlement so as to pursue their own individual suits. Settlement Agreement, R. 157-2, Page ID # 9762.

Appellants fell within the ambit of the settlement class. *See* SLP Letter, R. 302-2, Page ID # 15145-445 (Appellants' individual requests for exclusion showing they purchased a 2017-2022 Chevy Bolt EV).

The Class Settlement's opt-out provisions directed consumers to mail the settlement administrator a request containing their name, phone number, address, VIN, model year, approximate purchase date, and a clear statement of desire to be excluded.[2] Settlement Agreement, R. 157-2, Page ID # 9807-08.

---

[2] Specifically, the opt-out provision stated: "In order to opt out, the Settlement Class Member must complete and send to the Settlement Administrator a request for exclusion that is post-marked no later than

The opt-out provisions further required that "[a]ll requests for exclusion shall be in writing and shall be personally signed by the member of the Settlement Class who is opting out." *Id.* There is no definition for what "personally signed" or "in writing" means. The opt-out provisions do not state whether "wet," "handwritten," or "ink" signatures are required, or whether an electronic signature suffices for a consumer to opt out of the settlement class. The words "wet," "handwritten," or "ink" appear nowhere in the entire Class Settlement.

Notice of the Class Settlement ("Class Settlement Notice") was provided to class members in November 2024 through various channels, yet *none* of those channels anywhere stated that wet-ink signatures were required to opt out of the Class Settlement. Final Approval Order, R. 309, Page ID # 15509-10; Settlement Agreement, R. 157-2, Page ID # 9796-97, 9838-39, 9847, 9849.

---

the Opt-Out Deadline. The request for exclusion shall: (i) state the Settlement Class Member's full name, telephone number, and current address; (ii) provide the model year and [V]ehicle Identification Number ('VIN') of his/her/its Class Vehicle(s) and the approximate date(s) of purchase or lease, and (iii) specifically and clearly state his/her/its desire to be excluded from the Settlement and from the Settlement Class. All requests for exclusion shall be in writing and shall be personally signed by the member of the Settlement Class who is opting out." Settlement Agreement, R. 157-2, Page ID # 9807-08.

GM was necessarily aware that Appellants were represented by counsel, given that Appellants had sued GM prior to the Class Settlement being executed and were actively litigating those cases. *See e.g.*, MJN-21 (Damian Compl. dated to 2021), 425 (Moore Compl. dated to 2022), 1462 (Johnson Compl. dated to 2022). Yet GM did not draft the Class Settlement to send Class Settlement Notices to Appellants' counsel. Instead, GM drafted the Class Settlement to have notices sent only to Appellants *personally*, Prelim. Class Action Approval Mot., R. 157, Page ID # 9719, notwithstanding the well-established rule that litigation-related communications must be directed to a represented party's *attorney*, *see* Model Rules of Pro. Conduct r. 4.2 cmt. (Am. Bar Ass'n 2025).[3]

Thus, the ordinary consumers to whom the Class Settlement Notices were sent were left to review that notice on their own and to try to decipher how to opt-out, including exactly what it meant to "personally" sign their opt-out requests.

---

[3]https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_4_2_communication_with_person_represented_by_counsel/comment_on_rule_4_2/ (last visited May 11, 2026).

**E. Appellants sign their opt-out requests via DocuSign, and send those requests to GM.**

Upon learning of the Class Settlement, Appellants mailed the settlement administrator signed requests for exclusion from the Class Settlement. These requests for exclusion contained each of Appellants' names, addresses, phone numbers, VINs, model years, purchase or lease status, and a clear statement of their desire to opt out of the Class Settlements. SLP Letter, R. 302-2, Page ID # 15145-445.

Specifically, all of these opt-out requests confirmed in writing that "I, [class member], wish to exclude myself from the Class and settlement in *In re Chevrolet Bolt EV Battery Litigation*, **Case No. 2:20-13256-TGB-CI (E.D. Mich.)**." *Id.* (boldface in original).

These opt-out requests were personally signed by Appellants via DocuSign, *id.*, an industry-leading electronic signature platform that validates the signer's identity and generates an electronic trail. Saisuman Revankar, *E-signature and Digital Document Statistics By Market Size, Usage and Facts*, ElectroiQ (Nov. 10, 2025), https://electroiq.com/stats/e-signature-and-digital-document-statistics/ (stating that DocuSign controls 68% of the electronic signature market).

**F.** **The settlement administrator and the district court deem Appellants' opt-out requests ineffective based on supposed technicalities—not because their intent to opt out was unclear.**

Nevertheless, as was true with ***nearly 40%*** of opt-out requests,[4] the settlement administrator deemed Appellants' opt-out requests invalid. The administrator did so not because there was any question about their intent to opt out, but for purported technical deficiencies.

Specifically: Despite having accepted other electronically signed notices, the settlement administrator rejected Appellants' opt-out requests because they had been electronically signed. *See* Table of Movants, R. 271-8, Page ID # 13467-68; Opt-Out Order, R. 287, Page ID # 14319 ("Opt-out requests" that "included an electronic signature" "were properly denied by the Settlement Administrator"); Defendants' Opposition, R. 271, Page ID # 12999 n. 18.[5]

---

[4] The settlement administrator received 3,015 requests for exclusion. *See* Decl. (Cooper) regarding Requests for Exclusion, R. 299, Page ID # 15095 (discussing 2,618 requests and two letters that, together, requested exclusion of 397 unique persons and VINs). Of those, 1,825 were deemed valid and the remaining 1190 invalid—a 39.5% rejection rate. *See id.*

[5] For example, Ronald Yu and Alan Hall submitted opt-out requests that were electronically signed, Ronald Yu Opt-Out Request, R. 223-

Forty-four of Appellants' requests were also rejected for being postmarked one day late. Table of Movants, R. 271-8, Page ID # 13467-68; Opt-Out Order, R. 287, Page ID # 14315.

Promptly after receiving the settlement administrator's rejection of their opt-out requests, Appellants submitted another round of opt-out requests to the settlement administrator—this time with wet signatures. SLP Letter, R. 302-2, Page ID # 15139-445.

Appellants also filed a letter brief with the district court objecting to the settlement administrator's rejection of their opt-out requests. *Id.* at Page ID # 15138-39. Appellants argued that due-process principles required the court accept "'any reasonable expression of a request for exclusion [from the Class Settlement]'"— and that this was especially true since the Class Settlement Notices to consumers had failed to "advise[] that electronically signed requests would be rejected." *Id.* at Page ID # 15139. Appellants' letter brief further noted that upon learning that the settlement administrator had

---

3, Page ID # 11140-41; Alan Hall Opt-Out Request, R. 223-4, Page ID # 11143-44, and the settlement administrator accepted those requests as valid in its amended exclusion report. May 23, 2025 Decl. of Administrator Regarding Requests for Exclusion, R. 201, Page ID # 10849, 10861, 10879.

rejected their opt-out requests, Appellants "promptly submitted" a second set of opt-out requests with a wet signature, demonstrating their "clear intent to be excluded—not once, but twice." *Id.*

The district court agreed with the settlement administrator. Opt-Out Order, R. 287, Page ID # 14320-21. The court reasoned that consumers who wanted to know how to opt out could simply read the settlement agreement to learn about the wet-signature requirement (despite the fact that there is no explicit wet-signature requirement anywhere in the Class Settlement). *Id.*

**G.  The court finalizes the settlement.  The 50 individual consumers timely appeal thereafter.**

On December 22, 2025, the district court entered an order granting final approval of the Class Settlement, Final Approval Order, R. 309, Page ID # 15544, 15550, prompting Appellants to timely appeal that ruling on January 20, 2026. Notice of Appeal, R. 316, Page ID # 15583-84; Fed. R. App. P. 4(a)(1)(A).

**SUMMARY OF ARGUMENT**

Appellants are fifty California consumers with pending individual actions who sought to preserve their right to opt out of the Class Settlement so as to pursue their own individual claims. They sent the settlement administrator written requests that they be excluded from the Class Settlement—opt-out requests that included each Appellant's name, address, phone number, e-mail, vehicle model and year, VIN, whether they purchased or leased the vehicle, signature, and an unequivocal statement of their desire to opt out. SLP Letter, R. 302-2, Page ID # 15139-445.

Due process protects Appellants' choice to opt out of the Class Settlement. Indeed, purported class members do not forfeit valuable opt-out rights unless they *knowingly* and *intentionally* relinquish them. Yet, the district court bound Appellants to the Class Settlement anyway—despite their unmistakable intent to opt out—based on claimed technical missteps that caused no prejudice to any party. In so doing, the district court committed several reversible errors:

*First*, the district court erred by refusing to apply the "reasonable indication" standard for opting out of a class settlement, instead holding Appellants to strict compliance. Until now, every

25

court in this Circuit to address the issue has applied the reasonable-indication standard in determining whether an opt-out is effective. For good reason. Substance matters more than form, and the merits are more important than strict compliance with hyper-technical rules. The district court erred in adopting a strict compliance standard that is inconsistent with these well-established principles, thereby forcing litigants into a class settlement that they indisputably do not want to be a part of—and based on supposed failures to comply with opt-out requirements that they had no role in drafting.

*Second*, notice to Appellants was not provided pursuant to "the best notice that is practicable under the circumstances"—here, to Appellants' attorneys. Fed. R. Civ. P. 23(c)(2)(B). Nor did the notice even disclose a key requirement (a wet-ink signature) on which the district court relied to invalidate Appellants' opt-out requests. The notice deficiencies deprived Appellants of a meaningful opportunity to comply with any arguable wet-signature requirement before the deadline. Those deficiencies thus provide no occasion to reject Appellants' re-submitted opt-out requests.

*Third*, the Class Settlement's plain text confirms that electronic signatures satisfy the "personally signed" requirement—

demonstrating that Appellants' conduct was reasonable, that the notices were misleading, and that, at a minimum, the Court should reverse as to the six Appellants whose requests were rejected solely because they bore electronic signatures.

**STANDARDS OF REVIEW**

This Court generally reviews a district court's determination of whether a class member opted out of a settlement for abuse of discretion. *In re Deepwater Horizon*, 819 F.3d 190, 195 (5th Cir. 2016). However, "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States.*, 518 U.S. 81, 100 (1996). And here, this appeal turns on legal issues reviewed *de novo*—namely:

- Whether the district court applied the correct legal standard (including the "reasonable indication" standard), *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234 (6th Cir. 2003);

- Whether the district court correctly applied governing law to the undisputed facts, including constitutional due process principles, *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004); *Laible v. Lanter*, 91 F.4th 438, 442 (6th Cir. 2024); and

- Whether the district court correctly interpreted the settlement agreement as prohibiting electronic signatures, *Campbell v. Potash Corp. of Saskatchewan*, 238 F.3d 792, 797 (6th Cir.

2001) ("Contract interpretation questions . . . are 'generally considered questions of law subject to *de novo* review.'").

**ARGUMENT**

## I. The District Court Erred By Refusing To Apply The "Reasonable Indication" Standard To Appellants' Opt-Out Requests.

The district court invalidated Appellants' opt-out requests under a strict-compliance approach, concluding that the opt-out requests had been electronically signed and that forty-four of the requests had been filed one day late. Opt-Out Order, R. 287, Page ID # 14315, 14319. This is per se reversible error because both due process and Rule 23 required the court to apply the "reasonable indication" standard.

### A. Courts in this Circuit consistently find opt-outs effective when they reasonably indicate an intent to be excluded. The trial court erred in applying a more stringent standard.

In class actions primarily involving monetary damages like the one here, the right to opt out is required by due process. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011).

For good reason. Class actions are intended to be *voluntary* mechanisms by which individual litigants can consolidate their claims into one single action. And class members who are automatically

30

included into a class, as Appellants were here, may not want to be bound to the class or the settlement. Final Approval Order, R. 309, Page ID # 15508 (class certified under Rule 23(b)(3)); *Kern v. Siemens Corp*, 393 F.3d 120, 124 (2d Cir. 2004) (Rule 23(b)(3) does not "require members of any class affirmatively to opt into membership"). Putative class members may instead want to pursue their own individual lawsuits, which offer far more damages than the $700-$1,400 refund that the settlement offers class members for a $35,000 vehicle that they could not safely drive without risk. SLP Letter, R. 302-2, Page ID # 15139 (noting that all Appellants have "ongoing litigation pending in California courts"); Prelim. Class Action Approval Mot., R. 157, Page ID # 9720.

The opt-out procedure thus "preserves the right of potential class members who feel that their interests are in conflict with or antagonistic to the other class members to bring their own actions." 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1787 (3d ed. 2026).

Recognizing the fundamental importance of the right to opt out of a class, the Second and Tenth Circuits have held that strict compliance with opt-out procedures is *not* required. *Plummer v.*

*Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982); *In re Four Seasons Sec. L. Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974).

Instead, because nothing in Rule 23 "requires [class members] to file written reasons," they have held that "*[a]ny reasonable indication* of a desire to opt out should suffice." *Plummer*, 668 F.2d at 657 n.2 (emphasis added).

As the Tenth Circuit has explained, it "certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document," and "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice." *In re Four Seasons*, 493 F.2d at 1291. Thus, in *In re Four Seasons*, the Tenth Circuit held that a class member's letter to the trustee and plaintiffs' attorneys expressing a preference to pursue an individual suit over class participation if it could not pursue both satisfied the reasonable-indication standard, even if the member did not follow the specified opt-out procedure. *Id.* at 1289-91; *see also Bonner v. Tex. City Indep. Sch. Dist. of Tex.*, 305 F.Supp. 600, 617 (S.D. Tex. 1969) (trial testimony that "expressed a firm desire not to

become associated" with class action "sufficient to constitute a request to be excluded").

Courts in this Circuit have consistently applied the "reasonable indication" standard, too. *E.g.*, *In re Regions Morgan Keegan Sec., Derivatives and ERISA Litig.*, No. 09-2009, 2018 WL 5777503 at *4-5 (W.D. Tenn. Nov. 2, 2018); *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2006 WL 8439540 at *4-5 (N.D. Ohio Sept. 14, 2006).

By contrast, not one decision in this Circuit—other than the district court's decision here—has refused to apply the reasonable-indication test when determining the validity of an opt out.

**B.     The trial court's approach is inconsistent with the federal rules and well-established principles favoring substance over form.**

Rather than follow the Second and Tenth Circuits (and the district courts in this Circuit), the district court here adopted the rule applied by the Third and Seventh Circuits in *Perrigo Institutional Investor Group v. Papa*, 150 F.4th 206 (3d Cir. 2025) and *In re Navistar MaxxForce Engines Marketing, Sales Practices, and Products Liability Litigation*, 990 F.3d 1048 (7th Cir. 2021).  Order,

R. 287, Page ID # 14311-13, 14317-18, 14321.  Under that rule, where a court has specified an opt-out procedure, the reasonable-indication test does *not* apply, and the designated procedure must be strictly followed.  *In re Navistar*, 990 F.3d at 1052; *Perrigo*, 150 F.4th at 217.  Thus, the Third and Seventh Circuits require litigants to follow mechanical rules even where those eliminate a member's due-process right to opt out when the flexible standard would not.

The Third and Seventh Circuits' approach is wrong precisely for that reason:  Elevating formulaic rules above a litigant's clear expression that he does not want to be in a class is inconsistent with the purpose of Rule 23—i.e., to provide "considerable flexibility" when a class member is exercising their constitutional right to opt out. The Second and Tenth Circuits (and the district courts in this Circuit) have come to the better approach:  the reasonable-indication standard.

While rules "are an integral component of effective consolidation and management of" class actions, "rigid and unquestioned adherence to such limitations belies principles of equity and the court's role as a fiduciary in class actions." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 316 (3d Cir. 2001).

In rejecting the reasonable-indication approach, *In re Navistar* (Seventh Circuit) and *Perrigo* (Third Circuit) seem to suggest that the reasonable-indication test has only been applied in cases where no opt-out procedures are specified—and should continue to be applied only in those cases. *See In re Navistar*, 990 F.3d at 1052 ("We agree with the Tenth and Second Circuits that, when a district court has not issued instructions about how to opt out, the judge is free to accept as adequate any 'reasonable indication' of such a desire."); *Perrigo*, 150 F.4th at 217 (agreeing with *In re Navistar*). Their premise and conclusion are both wrong.

In fact, the leading Second and Tenth Circuit cases setting forth the reasonable-indication standard concerned fact patterns where an opt-out procedure *was* specified. *See Plummer*, 668 F.2d at 657 & n.2 (applying reasonable-indication standard even when procedure required members to "opt out by filing a written request with 'a brief statement of the reasons therefor'"); *In re Four Seasons*, 493 F.2d at 1289, 1291 (same, where members were "required to file a written request [for exclusion] with the clerk of the court" by a certain date).

Nor is there any other basis to adopt *In re Navistar* and *Perrigo's* suggestion that the reasonable-indication standard applies

only in select circumstances. It is axiomatic that substance matters more than form, and that the merits matter more than technicalities. Indeed, "Federal Rule of Civil Procedure 1 provides that the Rules 'should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.' Thus, courts are directed to 'disregard all errors and defects that do not affect any party's substantial rights.'" *Parrish v. United States*, 605 U.S. 376, 388-89 (2025).

Accordingly, terminating sanctions—which are functionally no different than forcing Appellants to forfeit valuable claims they have litigated for years—are imposed only for the most egregious violations, not for hyper-technical mistakes. *See Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589-92 (6th Cir. 2001) (abuse of discretion for district court to dismiss civil rights action on the basis that "Plaintiff exhibited a long record of delay without good cause").

Likewise, waivers are typically found only when knowingly made, rather than implied from "mere silence"—let alone imposed on those who have made their intent not to waive known, even if imperfectly. *See Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 260 (Mich. 2003).

It thus makes no difference whether procedures have been specified:  The reasonable-indication doctrine applies regardless, given the "considerable flexibility" afforded class members and the "serious due process implications of holding an absent member bound by a class adjudication."  *In re Four Seasons*, 493 F.2d at 1291; *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 70 (N.D. Cal. 1976).

The reasonable-indication standard is the right standard, as it appropriately protects a class member's constitutional right to opt out of a settlement.  As explained below, none of the district court's stated policy reasons justify deviating from this standard.

**C.     A technical-compliance rule would undermine opt-out rights and facilitate gamesmanship, without providing any other offsetting benefit.**

The Third and Seventh Circuits, as well as the district court below, rationalized their departure from the reasonable-indication standard by reasoning that adoption of the reasonable-indication standard would invite gamesmanship and make administration of class actions and settlements more difficult.  *In re Navistar*, 990 F.3d at 1052-53; *Perrigo*, 150 F.4th at 215-16; Order, R. 287, Page ID #

37

14312-13, 14317-18.  But these courts have it backwards.  The reasonable-indication standard *limits* gamesmanship from the parties most able to engage in it.

GM and the named plaintiffs (with their class counsel), drafted the settlement agreement that contained the opt-out procedures and the notice requirements setting forth how to opt out.  Neither had any interest in making the opt-out procedure simple.

Indeed, GM benefits when consumers who are interested in pursuing their own cases are instead forced to accept a $700-$1400 award.  "The greater the scope of the class, the more would-be litigants will be bound by a judgment approving a class settlement." Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 204 (2003).

Class counsel benefits from strict opt-out procedures, too:  a settlement agreement with strict opt-out procedures ensures that GM will sign off on a settlement that will ensure compensation for their actual client, the named plaintiffs who have necessarily chosen to opt-in.  A dearth of opt-outs also ensures that the resulting settlement—and class counsel's cut of it—is as large as possible.  *See* Christopher R. Leslie, *The Significance of Silence: Collective Action Problems*

*and Class Action Settlements,* 59 Fla. L. Rev. 71, 79-80 (2007) (explaining that both class counsel and the defendant may "collude to sacrifice the interests of the class" in light of class counsel's interest in securing payment on settlement and the defendant's interest in "eliminat[ing] liability while minimizing its overall payout").

The facts here are illustrative. The opt-out procedures (and notice provisions) were plainly complex, confusing, or both—as evidenced by an opt-out rejection rate approaching a staggering 40%. *See* n. 4, *supra*. Due to that high rejection rate, GM is set to force numerous consumers to give up the valuable claims they have litigated for years by forcing them in a settlement—one from which those consumers can recover *nothing* since the claims-submission deadline has passed. *See* Order Approving Class Action Settlement, R. 309, Page ID # 15545 (allowing claims to be submitted just 90 days from the order approving the class settlement even though appeals take far longer than that). Class counsel, meanwhile, is set to receive a $50 million payout. *See* Order Approving Class Action Settlement, R. 309, Page ID #15549.

The absence of any real representation in negotiating—or even signing off on—the Class Settlement and its opt-out procedures is

precisely why courts are tasked with acting as fiduciaries to protect

consumers seeking to opt out of class settlements in the first place.

*See In re Orthopedic*, 246 F.3d at 316 (discussing court's duty as

"fiduciary" in class actions).  Concerns about the gamesmanship *by*

*individual consumers* who are not even allowed to participate in

settlement negotiations—and whom the district court was supposed to

protect—are therefore misdirected.

The Third and Seventh Circuits' stated concerns are also

overstated.  With respect to administrability, courts around the

country have applied the reasonable-indication standard for decades.

*E.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 171

F.R.D. 213, 215-16 (N.D. Ill. 1997); *Gortat v. Capala Bros, Inc.*, No.

07 Civ. 3629 (ILG) (SMG), 2011 WL 6945186, at *11-12 (E.D.N.Y.

Dec. 30, 2011).  That courts have been applying the reasonable-

indication standard seamlessly for years undercuts any contention that

its adoption would materially hamper class-action administration.

The concern of gamesmanship from class members with no real

involvement in the class action is similarly overblown.  As the Third

Circuit put it in *Perrigo*, the core concern is that a "savvy class

member might recognize that it can minimize its downside by

litigating an individual action while simultaneously not opting out of the class. If the class member's individual action proves successful, it enjoys the recovery that comes with it. If not, it can argue that the lack of a formal opt-out notice means that it is entitled to take part in the class settlement." *Perrigo*, 150 F.4th at 216.

But this concern can be largely eliminated by raising the bar on what constitutes "reasonable indication" of an intent to opt out of a class—for example, by holding that individual litigation alone does not constitute reasonable indication, as many courts have so held. *E.g.*, *In re Broiler Chicken Antitrust Litig.*, 133 F.4th 761, 764 (7th Cir. 2025). The solution is not to throw the baby out with the bathwater. Parties engaging in gamesmanship should not be rewarded. But courts should not abandon the reasonable-indication standard, punishing those parties who sought to opt out in good faith, but who failed to meet some technical requirement.

*Perrigo*'s concerns are especially inapposite here. Appellants are not class members who failed to submit an opt-out request at all— like the appellants in *Perrigo* and *In re Navistar*—and who thus could only rely on their pursuit of individual litigation to show their intent to opt out. *Perrigo*, 150 F.4th at 210, 212; *In re Navistar*, 990 F.3d at

41

1050-51.  Rather, while Appellants *are* pursuing individual litigation, they *also* submitted opt-out requests on which they included their name, vehicle information, signature, and their clear desire to opt out. SLP Letter, R. 302-2, Page ID # 15139-445.

There is thus no concern that Appellants are seeking to "minimize [their] downside" by purposefully leaving their intent unclear.  *Perrigo*, 150 F.4th at 216.  There is no concern that the district court may find it difficult to determine whether Appellants intended to opt out.  Indeed, Appellants' opt-out requests unequivocally showed that they did.  Invalidating Appellants' opt-out requests based on minor technical deficiencies—electronically signed (assuming *arguendo* that electronic signatures were prohibited) and one-day-late postmarks for forty-four of the requests—when they had complied with the rest of the opt-out procedure and clearly indicated their desire to opt out is precisely the type of outcome that the reasonable-indication standard guards against.  Nor is there any possible prejudice, given the months it took for the district court to approve the settlement thereafter—ironically, in an order that extends the deadline to submit claims forms, even if only for a short period of time that has now passed, *see* Order Approving Class Action

Settlement, R. 309, Page ID #15545, rather than simply accepting the opt-out forms already filled out and submitted twice, *see* SLP Letter, R. 302-2, Page ID # 15139-445.

In sum, the question presented by this appeal is whether a class member who reasonably indicates his desire to opt out of a settlement is nevertheless bound to the settlement he does not want. Given the strong policy in favor of giving considerable flexibility to class members and of ensuring that class actions are a *voluntary* means of adjudicating rights, the answer to that question must be *no.* In holding to the contrary, the district court erred as a matter of law.

**D.** **Because the facts are undisputed, the Court can—and should—apply the reasonable-indication standard in the first instance and deem Appellants' opt-out requests to be legally sufficient.**

The district court's refusal to apply the "reasonable indication" standard is per se legal error. *See Whitt v. Gardner*, 389 F.2d 906, 909 (6th Cir. 1968) (holding "an erroneous legal standard to be reversible error"). The question is not whether Appellants perfectly complied with every procedural detail that might be inferred from the settlement materials, but whether their requests for exclusion

*reasonably indicated* their clear intent to opt out. *See* Argument I.A.-C., *supra*. By substituting a rigid, forfeiture-based approach for the widely adopted reasonable-indication rule, the district court applied the wrong legal standard. The only question is the proper disposition: Should this Court remand the case to the district court to apply the reasonable-indication standard? Or should this Court apply it?

The answer: Because all of the operative facts are undisputed, the Court can—and should—apply the correct standard in the first instance. *See Losantiville Country Club v. Comm'r of Internal Revenue*, 906 F.3d 468, 474 (6th Cir. 2018) ("Because the record here is complete and presents only uncontested facts, and those facts plainly permit only one conclusion, we may resolve this issue ourselves."). Indeed, the undisputed record establishes that each Appellant submitted a request that communicated his or her decision to be excluded from the settlement class. (SLP Letter, R. 302-2, Page ID # 15139.) Under the reasonable-indication standard, those opt-out requests were effective, and the district court's order invalidating them should be reversed with directions that the opt-out requests are effective.

At a minimum, the Court should vacate the district court's ruling and remand with instructions that the district court apply the reasonable-indication standard in the first instance to Appellants' opt-out requests—i.e., the district court should be directed to evaluate Appellants' opt-out requests using the correct legal standard. *See United States v. Mahbub,* 818 F.3d 213, 228 (6th Cir. 2016) (reversing for application of wrong legal error with directions to "apply[] the correct legal standard and test").

II. **Notice Was Deficient As A Matter Of Law, Both Because It Was Not Provided To Appellants' Counsel And Because It Did Not State That Wet-Ink Signatures Were Required.**

The district court was wrong to deem the opt out requests invalid for failing to strictly comply with the opt-out procedure for another reason: notice of the Class Settlement and of the opt-out procedure was deficient. Because of this deficiency, Appellants did not need to strictly comply with opt-out requirements; indeed, without adequate notice of what those requirements are, the right to opt out is "illusory." *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 760, n.2 (6th Cir. 2013) (The right to opt out is "an illusory one when the

45

class notice form failed to inform [class members] of their most significant ground of objection").

Notice to Appellants was not provided pursuant to "the best notice that is practicable under the circumstances"—here, to the attorneys that GM knew were representing them in related litigation. Fed. R. Civ. P. 23(c)(2)(B).  Nor did the notice even disclose the key requirement—a wet-ink signature—on which the district court relied to invalidate Appellants' opt-out requests.

### A.     The notices were sent directly to represented consumers, bypassing their retained counsel.

The federal rules entitle potential class members to "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  For good reason.  Stripping consumers of the right to litigate their cases and forcing them into a settlement against their will is a serious matter that implicates due process rights and the vindication of statutory remedies.  Here, that includes the full refund the California Legislature guarantees to consumers so they can replace a $30,000 vehicle that might catch fire—if it hasn't already—with one they can safely drive.  *See* Cal. Civ. Code, § 1793.2(d)(2) (requiring

manufacturers "promptly" repurchase or replace defective vehicles they fail to repair after a reasonable number of attempts).

By drafting the Class Settlement so that notices were only sent to Appellants' personal addresses, without sending notice to their counsel, GM did not ensure the best notice practicable under the circumstances here. After all, ABA Rule 4.2 requires that litigation-related communications involving represented parties be directed to counsel. Model Rules of Pro. Conduct r. 4.2 (Am. Bar Ass'n 2025. Accordingly, when consumers who retained attorneys receive settlement communications directly, they may reasonably assume their counsel is also informed and will be handling any procedural requirements on their behalf. That assumption is especially reasonable here, where Appellants' counsel were actively litigating claims arising from the very same defective Chevy Bolt vehicles at issue in the Class Settlement.

Thus, "the best notice that is practicable under the circumstances" under Federal Rule of Civil Procedure 23(c)(2)(B) was to send the notice to Appellants' *counsel*—counsel whom GM necessarily knew about by virtue of litigating against them in their individual suits.

GM's failure to do so had foreseeable consequences. Attorneys would have recognized the significance of an opt-out notice and the urgency of acting within a filing deadline. Had GM notified Appellants' counsel—who were actively litigating claims arising from the very same defective Chevy Bolt vehicles at issue in the Class Settlement—counsel would have ensured compliance with every technical requirement, including any arguable wet-signature requirement, and would have done so on time.

But GM never notified counsel. Instead, ordinary consumers— who had every reason to expect, consistent with ABA Rule 4.2, that litigation-related communications would be directed to their attorneys—were left on their own to parse a dense, 70-page settlement agreement and decipher what it meant to "personally sign" their opt-out requests. *See generally* Settlement Agreement, R. 157-2, Page ID # 9750-874. A lay consumer in that position might reasonably set the notice aside, assuming counsel would handle it.

Plus, that Appellants used DocuSign—an industry-leading electronic signature platform—to personally sign their requests was an entirely foreseeable and reasonable response to the ambiguous instructions on the opt-out notice. The procedural errors on which the

district court relied—both the use of electronic signatures and the one-day-late submissions—were thus the direct and foreseeable product of GM's decision to bypass Appellants' retained counsel.

Retained counsel exists precisely to prevent this type of inadvertent forfeiture. When a party's counsel is involved in the process, the type of procedural errors at issue here—using an electronic signature rather than a wet-ink signature, or missing a deadline by a single day—are far less likely to occur. A consumer who has retained an attorney reasonably expects that attorney to receive all litigation-related communications and to handle procedural requirements on the consumer's behalf. By routing settlement communications *around* Appellants' known counsel and only directly toward the consumers themselves, GM ensured that Appellants would face exactly the kind of procedural traps that counsel's involvement is designed to prevent—and then used those very errors to extinguish Appellants' constitutional right to opt out.

**B.    The notices failed to disclose any wet-signature requirement.**

Even setting aside the failure to notify counsel, the *notices themselves* were substantively deficient. This is because potential

class members are not merely entitled to the "best notice that is practicable" of a class settlement. *See* Fed. R. Civ. P. 23(c)(2)(B). Due process also requires that the notice inform interested parties "of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Applied in the class action context, due process requires notice that informs class members not just of their right to opt out, but also *how* to do so. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812-13 (1985); *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2019 WL 11005451, at *3 (E.D. Mich. Dec. 29, 2019).

Accordingly, if compliance with a wet-ink-signature requirement was the difference between preserving and forfeiting the constitutional right to opt out, due process required that Appellants receive clear notice of this requirement. They did not.

None of the Class Settlement notices stated that wet-ink signatures were required. Settlement Agreement, R. 157-2, Page ID # 9796-97, 9838-39, 9847, 9849. Indeed, the long-form notice's "How can I exclude myself from the Settlement?" section only instructed class members to include their "signature and the date" on their opt-

out requests.  *Id.* at Page ID # 9838-39.  A reasonable person reading this instruction would be on notice that *a signature* was required, but not that a *wet signature* was required.

The district court held that it did not matter that none of the Class Settlement notices stated that wet-signatures were required, because class members are '"not expected to rely upon the notices as a complete source of settlement information,"' and the notices were clear they only summarized the settlement agreement and referred members to the agreement for its complete terms.  Opt-Out Order, R, 287, Page ID # 14320.  But this reasoning conflates substantive terms with procedural instructions.  The case law that the district court relied upon, *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006), holds that notice does not have to contain all the "'*substantive* aspects'" of the settlement agreement.  *Id.* at \*33 (emphasis added).  This case law does not address whether notice must clearly explain the procedural requirements for exercising the constitutional right to opt out.

The distinction matters.  A reasonable class member reading a class settlement notice understands that the notice summarizes the class settlement's substance—the release of claims, the compensation

structure, the scope of the class. But when the same class settlement notice contains a section explicitly titled "How can I exclude myself from the Settlement?" and provides a list of requirements, *see* Settlement Agreement, R. 157-2, Page ID # 9838-39, a reasonable class member would expect that list to be *complete*, rather than expect additional, unarticulated requirements to be lurking somewhere in the settlement agreement.

Further, even if class members took the extra step of reading the settlement agreement, they *still* would not be put on clear notice that wet-ink signatures were required. Nowhere in the Class Settlement does it explicitly state that wet-ink signatures are required. Instead, the district court read that requirement into the agreement's "personally signed" and "in writing" requirements. *E.g.*, Opt-Out Order, R. 287, Page ID # 14319. But that language is at most ambiguous as to whether wet signatures are required.

Thus, for a class member to be aware of the wet-signature requirement, they would need to read through the dense settlement agreement and then interpret its terms in the same way as the district court. That is *not* notice "reasonably calculated" to inform them of

how to exercise their constitutional right to opt out. *Mullane*, 339 U.S. at 314.

The district court also suggested that class members were on notice of a wet-signature requirement because the court had denied a motion for electronic opt-outs before the notice program began. *E.g.*, Opt-Out Order, R. 287, Page ID # 14319. But Appellants had no involvement with that motion. They did not bring it, were not parties to it, and were not served with the district court's order. The Class Settlement Notices did not reference the order. The settlement website did not reference the order. The settlement administrator said nothing about the order.

Class members cannot reasonably be expected to monitor the docket for rulings on motions filed by other counsel that might affect their procedural rights—especially since many members were unrepresented and the others who were represented were still given the notices directly. Due process requires notice be directed at the affected parties, not buried in a court order issued in response to a motion filed by strangers. *Mullane*, 339 U.S. at 314 (due process requires "notice reasonably calculated" "to apprise *interested parties* of the pendency of the action") (emphasis added).

**C. Because notice was deficient, the district court was required to accept Appellants' resubmitted wet-signature requests.**

The two deficiencies identified above—sending notice only to consumers rather than their retained counsel, and failing to disclose any wet-signature requirement—independently and together require the same result: the district court was required to accept Appellants' resubmitted opt-out requests bearing wet signatures.

Appellants were represented litigants who reasonably expected litigation-related communications to be directed to their attorneys. When they received the Class Settlement Notice directly—and not through their counsel—they reasonably would not have appreciated the import of strict compliance. That they used DocuSign—an industry-leading electronic signature platform—to personally sign their opt-out requests was also an entirely foreseeable and reasonable response to the notice. And that their opt-out requests were postmarked one day late was precisely the kind of procedural misstep that counsel's involvement is designed to prevent. Every link in this chain traces back to the deficiencies in the Class Settlement Notice.

Because the notice deficiencies deprived Appellants of a meaningful opportunity to comply with any arguable wet-signature requirement before the deadline, the opt-out deadline cannot be enforced against their resubmitted requests, which were *early* since proper notice has never been afforded.

## III. The District Court Erred In Reading A Wet-Ink Signature Requirement Into The Opt-Out Provisions.

The district court invalidated Appellants' opt-out requests because they bore electronic rather than wet signatures. Opt-Out Order, R. 287, Page ID # 14319. For six Appellants, that was the sole basis for denial. Table of Movants, R. 271-8, Page ID # 13467-68. But as we now show, that ruling cannot be reconciled with the Class Settlement's text or the relevant canons of construction.

### A. The Class Settlement's plain text merely requires that opt-out requests are *personally signed*, not *personally signed "by hand."*

Michigan law governs interpretation of the Class Settlement. *See In re Auto. Parts Antitrust Litig.*, 997 F.3d 677, 681 (6th Cir. 2021); Settlement Agreement, R. 157-2, Page ID # 9822.

Under Michigan law, contract interpretation starts (and usually ends) with the text: Courts are required to interpret the "plain and ordinary meaning" of contracts and to enforce unambiguous terms as written, without adding requirements the contract does not contain. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 28 (Mich. 2005); *Wolf v. Mahar*, 862 N.W.2d 668, 673 (Mich. Ct. App. 2014).

The district court erred by reading a wet-signature requirement into the contract. Nothing in the Class Settlement requires consumers to hand sign their opt-out requests. To the contrary, the Class Settlement carefully prescribes the requirements for opting out—and a requirement of a wet-ink signature (or any prohibition on electronic signatures) is not among them. That absence is decisive.

Indeed, the Class Settlement's opt-out procedure is detailed and specific, requiring a written request, timely mailed to the Settlement Administrator, that includes the class member's identifying and vehicle information and "specifically and clearly" states the desire to be excluded. Settlement Agreement, R. 157-2, Page ID # 9807-08; *see also* n.2, *supra*.

Critically, while the Class Settlement insists on a "personally" signed request, it never says that the signature must be handwritten,

applied in ink, or executed by any particular method. *Id*. The words "wet," "handwritten," and "ink" do not appear *anywhere* in the agreement.

Instead, to opt out, a class member is required merely to submit a timely request that "(i) state[s] the Settlement Class Member's full name, telephone number, and current address; (ii) provide[s] the model year and [V]ehicle Identification Number ('VIN') of his/her/its Class Vehicle(s) and the approximate date(s) of purchase or lease, and (iii) specifically and clearly state[s] his/her/its desire to be excluded from the Settlement and from the Settlement Class." *Id.* All "requests for exclusion" must also "be in writing" and "be personally signed by the member of the Settlement Class who is opting out." *Id.* The agreement ***does not*** add any requirement that the class member personally sign by hand, with ink, or some other non-electronic means.

It follows that no such requirement exists: This seventy-plus page Class Settlement was "carefully negotiated" by experienced counsel, and it speaks in precise terms when it wants to impose technical conditions, including as to signatures. Order Denying Electronic Opt-Outs, R. 177, Page ID # 10324; Settlement Agreement,

R. 157-2, Page ID # 9820 (stating that the settlement agreement could be executed by either "imaged" or "original" signatures). If the parties to the Class Settlement intended a wet-ink requirement—with obvious practical consequences for how class members could exercise their opt-out right—they could have said so explicitly. They did not and the district court had no basis to read that requirement into the settlement agreement.

The district court's reading supplies that missing requirement by interpreting "personally signed" to mean "personally signed by hand." *See*, *e.g*, Opt-Out Order, R. 287, Page ID # 14319-20. That cannot be right either. After all, the Class Settlement does not define "personally signed," and the ordinary meaning—confirmed by the surrounding text—does not support a handwritten-only rule.

***"Personally signed" means the class member must cause the signature to occur.*** The Class Settlement itself explains what "personally" means in the context of the opt-out provisions. Immediately after requiring that opt-out requests be "personally signed," the agreement adds: "No other person or entity may opt out for a Settlement Class Member or sign a request for exclusion." Settlement Agreement, R. 157-2, Page ID # 9808. This adjacent

sentence makes plain that "personally" modifies the identity of the signer, not the method of signing.  In other words, that is a *who-must-sign* requirement, not a *how-must-sign* requirement that demands ink on paper.  *See* Order Denying Electronic Opt-Outs, R. 177, Page ID # 10327 (personal signature requirement ensures that "'the objection is made in the objector's personal capacity, and not at the behest of others'").

Dictionary definitions confirm this reading.  *In re Automotive Parts Antitrust Litigation*, 997 F.3d 677, 682 (6th Cir. 2021).  "Personally" means "in person," "for oneself," or "done by you and not by someone else."  *Personally*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/personally (last visited Apr. 27, 2026); *Personally*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/personally (last visited Apr. 27, 2026.  "Sign" means to "affix a signature to" or to "write your name . . . to show that you agree with its contents or have written or created it yourself."  *Sign,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sign (last visited Apr. 27, 2026); *Sign,* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/sign (last

visited Apr. 27, 2026.  Those definitions describe personal agency and assent; they do not require that the signature be handwritten.

***"In writing" is a form requirement, not a wet-ink requirement.***  The separate requirement that opt-out requests are "in writing" poses no obstacle to electronic signatures either.  The phrase "in writing" ordinarily distinguishes written communications from oral ones; it does not prescribe the mechanics of signature execution. *E.g.*, *In writing*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/in%20writing (last visited Apr. 27, 2026); *In writing*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/in-writing (last visited Apr. 27, 2026.  Appellants' opt-out requests were written documents mailed to the Settlement Administrator.  SLP Letter, R. 302-2, Page ID # 15139-445.

Reading the opt-out provision in context and as a whole, the Class Settlement requires that: (1) the opt-out request be a written document, (2) it convey certain information, and (3) it is personally signed by the consumer (i.e., not a third party).  Settlement Agreement, R. 157-2, Page ID # 9807-08.

Nothing in that text suggests an additional, unstated requirement that the class member personally sign *by hand*. The district court's interpretation therefore does not interpret the Class Settlement—it amends it. And as the district court itself recognized, it had no power to amend the Class Settlement. Opt-Out Order, R. 287, Page ID # 14314 ("As this Court has previously recognized, Rule 23 'does not permit a court to materially modify a proposed settlement,' including the opt-out provisions").

Appellants complied with the Class Settlement's opt-out procedures by submitting written opt-out requests containing the required information and by personally signing those requests electronically through DocuSign. SLP Letter, R. 302-2, Page ID # 15139-445. The district court's refusal to enforce this unambiguous agreement as written, and to impose a wet-signature requirement found nowhere in the text instead, violated fundamental principles of contract law. *Rory*, 703 N.W.2d at 30; *Wolf*, 862 N.W.2d at 673. The district court erroneously substituted its own judgment for the Class Settlement's—and in doing so, stripped Appellants of their right to opt out of an unfavorable settlement they did not want.

**B.** **Secondary canons of construction resolve any**

**uncertainty in favor of electronic signatures.**

Even if there were some ambiguity as to whether the opt-out

procedures (silently) required that consumers personally sign by hand

and in ink (there is not), the secondary tools of contract interpretation

point the same way as the text.

Michigan courts construe contracts to avoid forfeitures

"whenever it can be done without doing violence to plain contract

stipulations." *Zeitler v. Concordia Fire Ins. Co.*, 169 N.W. 332, 334

(Mich. 1912). The forfeiture of rights is a serious matter that

ordinarily occurs only on knowing and willful relinquishment—not

based on a misreading of an ambiguous contract provision.

Accordingly, where language can reasonably be read to provide for

forfeiture or not, courts have long selected the interpretation that

avoids forfeiture. *Pickalo v. Mack*, 186 N.W. 502, 504 (Mich. 1922).

The presumption against forfeiture dictates the result here.

After all, there is no dispute that Appellants intended to opt out and

that they submitted opt-out requests reflecting that personal decision.

*See* SLP Letter, R. 302-2, Page ID # 15139-445. Nor is there any

dispute that their requests contained the identifying information the

agreement requires for a request for exclusion—full name, telephone number, current address, VIN, model year, purchase or lease status, and an express statement of the desire to be excluded.  Settlement Agreement, R. 157-2, Page ID # 9807-08.

The only issue is the district court's *additional* requirement that the "personally signed" component could be satisfied only through a *handwritten* signature.  Opt-Out Order, R. 287, Page ID # 14319; Settlement Agreement, R. 157-2, Page ID # 9808.  Reading the opt-out procedures to impose that unstated, method-of-signature forfeiture would thus result in consumers relinquishing valuable rights—not based on the knowing relinquishment of rights typically required to exist before waiver—but based on a reading of opt-out provisions that are far from clear.

Plus, Michigan law recognizes that when contract language is susceptible to two different constructions, the more reasonable one is preferred.  *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 667 (Mich. Ct. App. 2000).

Here, the opt-out provision exists to provide a workable mechanism for class members to exclude themselves and to give interested parties certainty about who is in and who is out.  Opt-Out

Order, R. 287, Page ID # 14313.  And the "personally signed" requirement ensures requests are "'made in the [class member's] personal capacity, and not at the behest of others.'"  Order Denying Electronic Opt-Outs, R. 177, Page ID # 10327.  Those objectives are fully served when the class member provides the required identifying information and personally executes the signature electronically.  Settlement Agreement, R. 157-2, Page ID # 9807-08; *see* SLP Letter, R. 302-2, Page ID # 15139-445.  Reading a hand-signature requirement into the Class Settlement, meanwhile, does nothing but force consumers who clearly want to opt out into a class settlement that relinquishes valuable rights.

Worse, it does so as to consumers who had no power to shape the opt-out provisions' wording.  Courts have long construed ambiguous language in a contract against the drafter.  *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454-55 (Mich. 2003).  This is true even where the other party had a chance to review the contract and chose to sign off on the ambiguous language anyway.  *See Dyna Grind Servs., LLC v. City of Riverview*, No. 255825, 2006 WL 1185383 at *6-7 (Mich. Ct. App. May 4, 2006) (even where plaintiff engaged in "ongoing negotiations" prior to executing contract,

because plaintiff "merely accepted the contract as drafted by defendant," *contra proferentem* still applied).

Application of this rule is especially important here. Appellants were not involved in drafting the Class Settlement. Appellants are *unnamed* class members, not negotiated counterparties. They did not participate in drafting the agreement, did not review and sign it, and did not assent to its terms in the ordinary contractual sense.

*Other parties* with different interests drafted, negotiated, and signed off on opt-out provisions with "experienced counsel, and only after extensive arm's-length negotiations." Prelim. Class Action Approval Order, R. 174, Page ID # 10294-95. These sophisticated drafters had every opportunity to prohibit electronic signatures, had that been their intent. A single sentence—"electronic signatures are not valid" or "wet signatures are required" would have sufficed. Yet they included no such language. The words "handwritten," "wet," and "ink" appear *nowhere*. Instead, the settling parties drafted an agreement whose strongest indication of a wet-signature requirement is a single sentence providing: "All requests for exclusion shall be in writing and shall be personally signed." Settlement Agreement, R. 157-2, Page ID # 9807-08.

This is a case where experienced counsel knew how to draft an explicit prohibition on electronic signatures, had every opportunity to draft such an explicit prohibition, but never did. This drafting choice must be construed against the drafters. Appellants, as unnamed class members, had no voice and no control in drafting the agreement, and should not be penalized for any imprecision in its terms.

Thus, even if this Court were to find ambiguity (it should not), Michigan's canons of construction militate against reading the opt-out provision as imposing an unstated wet-ink requirement where doing so would cause a severe forfeiture, where a reasonable construction avoids that result, and where any residual uncertainty must be construed against the sophisticated drafters who selected the language.

The e-signature analysis thus confirms what Sections I and II independently establish: Appellants' opt-out requests reasonably indicated their intent to be excluded, the notices were constitutionally deficient, and Appellants' conduct was objectively reasonable throughout. For the six Appellants whose requests were rejected solely on e-signature grounds, this analysis provides a separate and sufficient basis for reversal—the Class Settlement simply does not require wet-ink signatures. For all fifty Appellants, it reinforces that

the notices were affirmatively misleading and that their use of DocuSign was the natural and predictable response to a Class Settlement that includes no such requirement.

**CONCLUSION**

The Court should reverse the order invalidating Appellants' requests for exclusion from the Class Settlement. The district court's ruling improperly bound consumers who unmistakably sought to opt out based on technical defects that caused no prejudice.

The Court should hold that Appellants' opt-out requests were effective as a matter of law under the "reasonable indication" standard—or at least vacate and remand with instructions that the district court apply the "reasonable indication" standard in the first instance.

The Court should also reverse because the Class Settlement notices were constitutionally deficient, and the resubmitted wet-signature opt-out requests must be accepted as timely.

At a minimum, the Court should reverse as to those Appellants whose requests for exclusion were rejected solely because they were electronically signed.

Dated:  May 13, 2026

THE LIBLANG LAW FIRM, P.C.
    Dani K. Liblang

GREINES, MARTIN, STEIN &
RICHLAND, LLP
    Cynthia E. Tobisman
    Joseph V. Bui
    Edward Tao


By:  */s/ Edward Tao*

    Edward Tao
Attorneys for Plaintiffs and Appellants
INDIVIDUAL CLASS MEMBERS
STRATEGIC LEGAL PRACTICES APC

# CERTIFICATE OF COMPLIANCE

This document complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document (**APPELLANTS' OPENING BRIEF**) contains 10,488 words. The brief is also in Times New Roman size 14 font, as required by Federal Rule of Appellate Procedure 32(a)(5).

Dated: May 13, 2026        */s/ Edward Tao*

                                         Edward Tao

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2026, the foregoing document was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the court's CM/ECF system. All participants are registered CM/ECF users and will be served electronically via that system.

/s/ Edward Tao
Edward Tao

**ADDENDUM**

## I. DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i) and 30(g),

Appellants hereby designate the following relevant district court

documents:

| No. | ECF No. | Description | Date Filed | Relevant Page ID # Range |
|---|---|---|---|---|
| 1 | 27 | Amended Consolidated Class Action Complaint And Demand For Jury Trial | September 17, 2021 | Page ID # 1164-486 |
| 2 | 118 | Order Resolving Defendants' Multiple Pretrial Motions | September 30, 2022 | Page ID # 7915-16, 7920 |
| 3 | 157 | Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement | May 16, 2024 | Page ID # 9719-20, 9723 |
| 4 | 157-2 | Stipulation And Agreement Of Settlement (Class Settlement) | May 16, 2024 | Page ID # 9762, 9796-97, 9807-08, 9820, 9822, 9838- |

71

| | | | | 39, 9847, 9849 |
|---|---|---|---|---|
| 5 | 167 | Motion To Allow Electronic Opt Outs (HOP Opt-Outs) | August 16, 2024 | Page ID # 10160-72 |
| 6 | 174 | Order Granting Plaintiffs' Unopposed Motion (ECF 157) For Preliminary Approval Of Class Action Settlement | September 26, 2024 | Page ID # 10294-95 |
| 7 | 177 | Order Denying Movants' Motion To Allow Electronic Opt-Outs | October 28, 2024 | Page ID # 10324, 10327 |
| 8 | 201 | Declaration Of Settlement Administrator Regarding Requests For Exclusion | May 23, 2025 | Page ID # 10849, 10861, 10879 |
| 9 | 203 | Stipulation Regarding Procedure For Challenging Determination Of Validity of Requests For Exclusion | May 29, 2025 | Page ID # 10886-894 |
| 10 | 223-3 | Ronald Yu Opt-Out Request | July 9, 2025 | Page ID # 11140-41 |

| | | | | |
|---|---|---|---|---|
| 11 | 223-4 | Alan Hall Opt-Out Request | July 9, 2025 | Page ID # 11143-44 |
| 12 | 271 | Defendants' Joint Omnibus Opposition To Motions Challenging Determination Of Invalidity Of Requests For Exclusion | July 31, 2025 | Page ID # 12999 |
| 13 | 271-6 | Declaration Of Settlement Administrator Regarding Requests For Exclusion | July 31, 2025 | Page ID # 13393-98 |
| 14 | 271-8 | Settlement Administrator's Table of Opt-Out Movants | July 31, 2025 | Page ID # 13467-68 |
| 15 | 287 | Order Regarding Movants' Motions Challenging Determination Of Invalidity Of Requests For Exclusion | October 17, 2025 | Page ID # 14302, 14311-15, 14317-23 |
| 16 | 295 | MFS Legal's Motion For Reconsideration Of Order Invalidating Opt Outs | October 31, 2025 | Page ID # 14385-93 |
| 17 | 302 | Appellants' Notice Of Joinder Of | November 18, 2025 | Page ID # 15133-35 |

| | | Motion To Reconsider (Joining ECF 295) | | |
|---|---|---|---|---|
| 18 | 302-2 | SLP Letter Requesting Exclusion From The Settlement | November 18, 2025 | Page ID # 15138-445 |
| 19 | 308 | Order Regarding Movants' Motions For Reconsideration Of Order Regarding Validity Of Opt Out Requests | December 22, 2025 | Page ID # 15487-502 |
| 20 | 309 | Opinion And Order Granting Final Approval Of Class Action Settlement And Motion For Attorneys' Fees | December 22, 2025 | Page ID # 15504-05, 15508-10, 15544, 15550 |
| 21 | 316 | Appellants' Notice of Appeal | January 20, 2026 | Page ID # 15583-84 |

## II.     DESIGNATION OF RELEVANT STATUTES, RULES, AND REGULATIONS

Pursuant to Federal Rule of Appellate Procedure 28(f), which requires the relevant parts of statutes, rules, or regulations be set out in "the brief or in an addendum at the end" if the "court's determination

of the issues" "requires the study" of these materials, Appellants hereby designate the following relevant statutes, rules or regulations:

**Federal Rule of Civil Procedure 23(c)(2)(B)**

For any class certified under Rule 23(b)(3)–or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)–the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.  The notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

## III. DECISIONS NOT AVAILABLE IN PUBLICLY ACCESSIBLE ELECTRONIC DATABASES

Pursuant to Federal Rule of Appellate Procedure 32.1(b) and Sixth Circuit Rule 32.1(a), Appellants have reviewed all cases cited within the Opening Brief and have confirmed that all cited cases are available in publicly accessible electronic databases, including Westlaw.

To the extent that any cited decision is later determined to not be available in a publicly accessible electronic database, Appellants will promptly supplement this Addendum in compliance with Federal Rules of Appellate Procedure 32.1(b) and Sixth Circuit Rule 32.1(a).

Dated: May 13, 2026

THE LIBLANG LAW FIRM, P.C.
Dani K. Liblang

GREINES, MARTIN, STEIN &
RICHLAND, LLP
Cynthia E. Tobisman
Joseph V. Bui
Edward Tao

By: */s/ Edward Tao*
Edward Tao
Attorneys for Plaintiffs and Appellants
INDIVIDUAL CLASS MEMBERS
STRATEGIC LEGAL PRACTICES APC